UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------

ANDRE NICHOLS, and DANIEL
MORAES,

                     Plaintiffs,

    - against -

MICHAEL T. MAHONEY, EMC CONTRACTING
INC., EMC NEW YORK CONTRACTING, and
EMC of NEW YORK, INC.,

                     Defendants.

--------------------------------------------------------X

08 CV 03306

Judge McMahon

Docket No. 08-CV-

COMPLAINT

RECEIVED
APR 02 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs, appearing by their attorneys, O'Dwyer & Bernstien, LLP, as and for their Complaint against defendants, allege as follows:

## I. PRELIMINARY STATEMENT

1.    Plaintiffs Andre Nichols ("Nichols") and Daniel Moraes ("Moraes"), former employees of defendants EMC Contracting, Inc. EMC New York Contracting, and EMC of New York, Inc., are the victims of a scheme perpetrated by defendants to depress the wages paid to its employees, including plaintiffs, by knowingly hiring a workforce substantially comprised of illegal workers, in violation of Section 274 of the Immigration and Nationality Act, for the express purpose of depressing the wages of all its workers (hereafter "the Illegal Alien Hiring Scheme"). In furtherance of their illegal scheme, defendants engaged in numerous instances of mail and/or wire fraud.

2.    Defendants' illegal scheme also restrains free competition within the construction industry by allowing defendants to have an unfair advantage over other employers who do not employ illegal workers, and forces workers authorized to work in the U.S. to unfairly compete against illegal workers for jobs at much lower wages.

3.    In addition, defendants regularly and routinely did not comply with federal and New York State wage and overtime laws.  Plaintiffs regularly worked more than 40 hours a week for defendants, without overtime wages.

4.    As a result of defendants' illegal and fraudulent actions, plaintiffs have incurred substantial damages.

## II.  JURISDICTION, AND VENUE

5.    This Court has subject matter jurisdiction over Counts I, II, and III of this case pursuant to 18 U.S.C. § 1964(c), and 28 U.S.C. § 1331.  This Court has subject matter jurisdiction over Count IV of this case pursuant to 15 U.S.C. § 15(a), and 28 U.S.C. § 1331 and § 1337.  This Court has subject matter jurisdiction over Count V of this case pursuant to N.Y. Gen. Bus. Law § 340.  This Court has subject matter jurisdiction over Count VI of this case pursuant to 29 U.S.C. § 216, and 28 U.S.C. § 1331 and § 1337.  This Court has subject matter jurisdiction over Count VII of this case pursuant to N.Y. Labor Law § 198 and § 663.  This Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

6.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims occurred in this district.  Venue is also proper in this district pursuant to 28 U.S.C. § 1391(c), as defendants EMC Contracting, Inc., EMC New York Contracting, and/or EMC of New York, Inc. are corporations subject to the personal jurisdiction of this district.  Venue is also proper in this district pursuant to 18 U.S.C. § 1965 and 15 U.S.C. § 22, as defendants EMC Contracting, Inc., EMC New York Contracting, EMC of New York, Inc., and Michael T. Mahoney reside, are found in, and/or transact their business affairs in the Southern District of New York.

III. PARTIES

7.      Plaintiff Andre Nichols is, and at all relevant times, has been a resident of New York and authorized to be employed in the U.S.  Plaintiff Nichols agrees and consents to be a plaintiff in this lawsuit for claims brought under the Fair Labor Standards Act.  A written consent executed by plaintiff is attached hereto.

8.      Plaintiff Daniel Moraes is, and at all relevant times, has been authorized to be employed in the U.S.  Plaintiff Moraes agrees and consents to be a plaintiff in this lawsuit for claims brought under the Fair Labor Standards Act.  A written consent executed by plaintiff is attached hereto.

9.      Upon information and belief, defendant Michael T. Mahoney ("Mahoney") is, and at all relevant times, has been a resident of New York, with a principal place of residence located at 4 Brown Drive, Pearl River, NY, in the County of Rockland and State of New York.

10.     Upon information and belief, defendant EMC Contracting, Inc. is a corporation organized under the laws of the State of New York, with a principal place of business located at 36 Mill Plain Road, Suite 301, Danbury, CT, 06811.

11.     Upon information and belief, defendant EMC New York Contracting is an unincorporated business controlled by defendant Mahoney with a principal place of business located at 74 Academy Street, Belleville, NJ 07109.

12.     Upon information and belief, defendant EMC of New York, Inc. is a corporation organized under the laws of the State of New York, with a principal place of business located at 74 Academy Street, Belleville, NJ 07109.

13.     Upon information and belief, defendants EMC Contracting, Inc.,

EMC New York Contracting, and EMC of New York, Inc. (hereinafter collectively referred to as "EMC") are joint or single employers, or alternatively, alter egos. Upon information and belief, defendants EMC, in addition to maintaining offices at 36 Mill Plain Road, Suite 301, Danbury, CT, and 74 Academy Street, Belleville, NJ, also maintain or maintained offices at 29 Forest Ave., Pearl River, NY, 22 South Main Street, Pearl River, NY, 225 Millwood Road, Chappaqua, NY, and a post office box at P.O. Box 83, Bethel, CT 06801.

## IV. FACTS

A.  The Illegal Alien Hiring Scheme

14.    The construction industry requires the work of skilled construction workers and carpenters who are involved in nearly every phase of building.

15.    Carpentry work includes pouring the concrete to create slab floors, framing and finishing interior and exterior walls, applying drywall, and installing molding and millwork. From laying the foundation to trimming the doors and windows, carpenters create the major structural elements of today's modern buildings and infrastructure. The work is often dangerous and requires specialized skills.

16.    Some contractors respond to the competitive pressures of the industry by exploiting the ready and available population of workers not authorized to work in the U.S.

17.    Upon information and belief, since 2002, defendants EMC have been in the construction business in New York City.

18.    Upon information and belief, defendant Mahoney is the President of EMC Contracting, Inc., EMC New York Contracting, and EMC of New York, Inc. and as such, is involved in every aspect of the business of EMC, including, but not limited to, the hiring of its workers.

19.    Upon information and belief, defendants EMC employ or have employed dozens of hourly paid workers in its operations in New York City.

20.    Upon information and belief, defendants EMC have employed and continue to employ workers that they knew or had reason to know were not authorized to work in the U.S.

21.    Upon information and belief, defendants EMC routinely fail to ask employees for proof of employment eligibility when hired, because they know that the worker is not authorized to work in the U.S.

22.    Upon information and belief, on several occasions EMC shut down job sites, because they were in fear of raids by the Immigration and Naturalization Services ("INS").

23.    Upon information and belief, from time to time defendants held meetings in which they told their workers they had an attorney who could get them legal work papers if they paid the attorney several thousand dollars.

24.    Defendants EMC and Mahoney hired the illegal workers with the express purpose to drive down the wages of all its workers, thereby reducing their labor costs allowing them to make considerable profits.

25.    Upon information and belief, in 2007, defendants EMC began a business relationship with American Latin Services Enterprises, Corp. ("American Latin").

26.    Upon information and belief, American Latin provides EMC a pool of illegal workers to work on EMC job sites.  These workers take direction from EMC's foremen and supervisors, but are paid by American Latin.  Upon information and belief, American Latin receives a fee for each worker provided to EMC.

27.    Upon information and belief, defendants EMC were and continues to be employers and/or joint employers with American Latin.

28.    Upon information and belief, American Latin knew or had reason to know that the workers they provided to EMC were not authorized to work in the United States.

29.    Upon information and belief, defendants EMC knew or had reason to know that the workers American Latin provided to EMC were not authorized to work in the U.S.

30.    Plaintiff Nichols worked for defendants EMC from October, 2004 to November, 2006.

31.    Plaintiff Moraes worked for defendants EMC in 2007.

32.    Upon information and belief, plaintiffs were paid wages which were significantly lower than the market rate.

33.    As intended, defendants EMC's employment of large numbers of illegal workers substantially increased the supply of workers from which EMC made up their hourly workforce.  The unlawful expansion of the labor pool had the direct and proximate result of enabling EMC to depress the wages of all its hourly workers, including plaintiffs and others authorized to work in the United States.

34.    The wages of EMC's workforce, including plaintiffs' wages, were significantly lower than they would be if EMC and Mahoney did not engage in the Illegal Alien Hiring Scheme.

35.    An intended effect of EMC's employment of illegal workers was to deprive all their workers of any individual or collective bargaining power.  Because EMC and Mahoney knew that many of their workers were not authorized to work in the U.S., they knew

that their workers would not complain about wages, lack of overtime pay and benefits, and dangerous working conditions out of fear of losing their jobs.

B.  Mail and/or Wire Fraud

36.    Defendants have also engaged in numerous instances of mail and/or wire fraud in furtherance of the Illegal Alien Hiring Scheme.

37.    As part of and in furtherance of the illegal scheme, defendants made repeated use of, or had reason to believe that others would make use of the U.S. Postal Service and interstate wires to transmit various documents and monies, including, without limitation, I-9 forms (otherwise known as an "Employment Eligibility Verification Form") that were sent to the INS.

38.    The Immigration Reform and Control Act, 8 U.S.C. § 1324 *et seq.*, requires employers to verify, under penalty of perjury, that they have examined certain documents provided by each employee which establishes the employee's authorization for employment in the U.S.

39.    The I-9 form is the document each employer must complete to verify employment eligibility for each employee.

40.    Upon information and belief, defendants and American Latin knowingly engaged in a scheme in which they knowingly falsely attested to having complied with the I-9 requirements.  Upon information and belief, defendants and American Latin neither examined necessary documents nor asked their workers to provide the necessary documentation.

41.    Upon information and belief, defendants and American Latin also knowingly engaged in a scheme in which they knowingly and recklessly accepted false documents as proof of employment eligibility.

42.    Defendants and American Latin used the U.S. mail to further the fraudulent scheme, and did so with the specific intent to defraud.

43.    Each and every mailing of an I-9 form to the INS for the purpose of facilitating the hiring of an illegal alien violates the mail fraud statute, 18 U.S.C. § 1341.

44.    Upon information and belief, defendants also made repeated use of the interstate wires to transfer and move monies and/or documents in furtherance of the Illegal Alien Hiring Scheme.

45.    Upon information and belief, defendants paid their workforce from accounts in which there were insufficient funds to pay their workers, thereby causing paychecks to bounce.

46.    Each and every use of wire transmissions in furtherance of defendants' illegal scheme to defraud their workers violates the wire fraud statute, 18 U.S.C. § 1343.

C.    The RICO Violations

47.    The federal RICO pattern of racketeering activity engaged by EMC and Mahoney consists of their ongoing violation of Section 274(a)(3)(A) of the Immigration and Nationality Act, which provides that "Any person who, during any 12-month period, knowingly hires for employment at least 10 individuals with actual knowledge that the individuals are aliens . . . shall be fined under title 18, United States Code, or imprisoned for not more than 5 years, or both."

48.    Upon information and belief, defendants EMC and Mahoney have knowingly hired 10 or more individuals each calendar year since 2004 who were not authorized to work in the U.S.

49.    The federal RICO pattern of racketeering activity engaged by EMC and Mahoney also consists of their ongoing violation of Section 1961(1)(B), which provides that mail and wire fraud constitute racketeering activity.

50.    Upon information and belief, since 2004, defendants EMC and Mahoney have knowingly engaged in multiple instances of mail and/or wire fraud in furtherance of their illegal scheme.

51.    Defendants' "open-ended" pattern of racketeering activity in violation of Section 274 of the Immigration and Nationality Act and the provisions of Section 1961(1)(B) relating to mail and wire fraud are related in that they have the same or similar objective of depressing the wages of all EMC's and Mahoney's hourly workers.

52.    Defendants' "open-ended" pattern of racketeering activity amounts to and/or poses a threat of continued long-term future criminal conduct.

53.    Defendants' knowing employment of illegal workers, their acceptance and use of false employment documents, and their use of the mail and/or wires to further their illegal activities are part of defendants' regular way of doing business.

54.    Defendants' racketeering activity is neither isolated nor sporadic, and instead is ongoing and will continue into the future.

D.    The Enterprises

55.    Defendant Mahoney has engaged in an open and ongoing pattern of racketeering activity, in violation of Section 274 of the Immigration and Nationality Act, 8 U.S.C. § 1324(a), and in violation of 18 U.S.C. § 1341, through his conduct and participation in defendants EMC, the enterprise.

56.    Defendant Mahoney, as President of EMC Contracting, Inc., EMC New

York Contracting, and EMC of New York, Inc., is personally involved in and directs all aspects of the business of EMC, including the operation and management of the enterprise itself, including the hiring of workers.

57.    Defendant Mahoney knowingly hires a workforce largely comprised of illegal workers. Mahoney then directly or directs others within EMC to forego the employment eligibility requirements mandated by law. Even when employees present proof of employment eligibility, Mahoney knowingly accepts or directs others within EMC to accept fraudulent papers as proof of employment eligibility. Mahoney retains the illegal workers as part of his workforce despite knowing they are not eligible to work in the U.S.

58.    Defendant Mahoney, a natural person and owner and officer of defendants EMC, is distinct from EMC, the legal entities themselves.

59.    Defendant Mahoney's active participation was and continues to be a significant factor in the success of the Illegal Alien Hiring Scheme.

60.    Mahoney and EMC share the common purpose of obtaining illegal workers for employment by EMC.

61.    The enterprise affects interstate commerce in that the monies, supplies, equipment, and the illegal workers employed by defendants EMC travel in interstate commerce.

62.    Defendant Mahoney accepted and retained the benefits of the acts of racketeering activity, thereby ratifying the conduct of EMC employees who may have assisted him in committing the acts of racketeering activity.

63.    Defendants EMC and Mahoney have engaged in an open and ongoing pattern of racketeering activity, in violation of Section 274 of the Immigration and Nationality Act, 8 U.S.C. § 1324(a), and in violation of 18 U.S.C. § 1341, through their participation in an

association-in-fact enterprise with American Latin, who, upon information and belief, supplied and continues to provide EMC with illegal workers.

64.    Defendants EMC's and Mahoney's active participation in the operation and management of the enterprise was a significant factor in the success of the Illegal Alien Hiring Scheme.

65.    Upon information and belief, defendants EMC and Mahoney directed American Latin to obtain workers for EMC job sites.  EMC and Mahoney knew or had reason to know that the workers American Latin provided them were not authorized to work in the U.S.

66.    Upon information and belief, the workers provided by American Latin, while taking direction from EMC foreman and supervisors, were paid by American Latin.  In some instances, workers who previously were paid by EMC were, without their consent, then paid by American Latin but at further reduced wages.

67.    Upon information and belief, EMC were and continue to be employers and/or joint employers with American Latin.

68.    American Latin is a separate legal entity under separate ownership from defendants EMC and Mahoney.

69.    EMC, Mahoney, and American Latin share the common purpose of obtaining illegal workers for employment by EMC.

70.    Upon information and belief, American Latin reaps financial benefits for each illegal worker they provide to EMC.

71.    By obtaining illegal workers, EMC and Mahoney are able to reduce their labor costs by depressing the wages of all their workers, thereby reaping a large economic benefit for themselves.

72.     The enterprise affect interstate commerce in that the monies, supplies, equipment, and the illegal workers employed by defendants EMC and provided by American Latin travel in interstate commerce.

73.     EMC and Mahoney accepted and ratified the benefits of the acts of racketeering activities, thereby ratifying the conduct of the members of the enterprise, including American Latin, who assisted them in committing the acts of racketeering activity.

E.     Defendants' Anti-Trust Violations

74.     Defendants EMC and Mahoney are in the carpentry business in the New York metropolitan area.

75.     Defendants enter bids to developers and/or general contractors to provide carpentry work on building projects. Developers or general contractors receive multiple bids from different companies to provide services. Jobs are typically awarded to the lowest qualified bidder. Companies that keep costs low have a better chance of being awarded construction jobs.

76.     The relevant service market affected by defendants' illegal actions is the very specialized area of carpentry work in the construction industry. Carpentry work includes pouring the concrete to create slab floors, framing and finishing interior and exterior walls, applying drywall, and installing molding and millwork. From laying the foundation to trimming the doors and windows, carpenters create the major structural elements of today's modern buildings and infrastructure. The work is often dangerous and requires specialized skills.

77.     By participating in the Illegal Alien Hiring Scheme (explained in detail above), defendants Mahoney, EMC Contracting, Inc., EMC New York Contracting, and EMC of New York, Inc. have willingly conspired to depress the wages of all its hourly workers in order to underbid competitors for projects, and thereby make substantial profits.

78.    Defendants' employment of illegal workers harms competition in two ways. First, by employing a workforce of illegal workers, defendants are able to pay their workers lower wages, which keeps their overall costs low thereby allowing them to unfairly underbid their competitors for construction projects for which they are awarded. Second, by employing illegal workers, defendants illegally inflate the labor pool of available workers thereby allowing employers to hire their workers not based on skill but on acceptance of lower wages. This in turn creates a workforce of low paid unskilled workers performing work requiring a high level of skill. Defendants' employment of illegal workers also discourages efforts to advocate for increase wages, overtime pay, and benefits, thereby further restraining competition.

79.    Defendants' illegal conduct has a substantial effect on interstate commerce. Upon information and belief, defendants submit bids to developers and/or general contractors whose principal places of business are within and outside of the New York metropolitan area; obtain financing from financial institutions based in different cities in different states; enter into contracts with suppliers and vendors from within and outside the New York metropolitan area; and are involved in transactions in interstate commerce. Upon information and belief, defendants hire workers who live within and outside the New York metropolitan area.

80.    Defendants' unlawful actions have unreasonably restrained trade in the market for carpentry work in the construction industry in the New York metropolitan area.

F.    Defendants' Violations of Wage and Hour Laws

81.    Defendants' employment and hiring of illegal workers also allowed them

to regularly and routinely violate federal and New York State hour and wage laws by not paying their workers, including plaintiffs, overtime pay for hours worked beyond 40 hours a week.

82.    During the time they worked for EMC, plaintiffs did not receive overtime wages or benefits.  They regularly worked over 40 hours a week.  In some weeks, they were paid no wages at all because their pay checks bounced for insufficient funds.

83.    Defendants willfully and intentionally failed to pay plaintiffs their lawful wages.

84.    Defendants knew and/or showed reckless disregard for the wage and hour laws to which they were obligated to follow.

G.    Plaintiffs' Injuries

85.    Defendants' RICO violations are the direct and proximate cause of the depression of plaintiffs' wages below the market wages for comparable work if the labor market was comprised solely of workers authorized to work in the U.S.

86.    Plaintiffs were the intended victims of defendants' racketeering enterprises, and as such, their injuries were reasonably foreseeable.

87.    Defendants' Illegal Alien Hiring Scheme negatively affects competition among workers, such as plaintiffs, who are authorized to work in the United States.

88.    Defendant's willful and intentional disregard of the federal and state wage and hour laws was the foreseeable and proximate cause of plaintiffs' lost wages, including overtime pay.

COUNT I

VIOLATIONS OF FEDERAL RICO, 18 U.S.C. § 1962(c)

89.    Plaintiffs reallege and incorporate by reference herein the allegations set

forth in paragraphs 1 through 88 as if fully restated hereinafter.

90.    At all times relevant to this action, defendant Mahoney was a "person" as defined in 18 U.S.C. § 1961(3).

91.    Defendants EMC constitute the enterprise as defined in 18 U.S.C. § 1961(4).  The enterprise had and continues to have an ongoing existence, structure, and hierarchy.

92.    At all times relevant to this action, Mahoney's violations of the Immigration and Nationality Act and the mail and wire fraud statutes, as detailed in this Complaint, constitute a "pattern of racketeering activity" under 18 U.S.C. § 1961(5).

93.    Defendant Mahoney's violations of the Immigration and Nationality Act and the mail and wire fraud statutes has been ongoing since 2004.

93.    Defendant Mahoney has been and is presently violating 18 U.S.C. § 1962(c) of RICO, which provides that it "shall be unlawful for any person . . . associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . "

95.    By reason of defendant's RICO violations, plaintiffs have been injured in their property.  Plaintiffs were paid depressed wages as a direct result of defendant's Illegal Alien Hiring Scheme and acts of mail and/or wire fraud in furtherance of the scheme.  Plaintiffs were the intended and direct victim of defendant's RICO schemes and their injuries of depressed wages were intended and foreseeable.  As a direct result of the schemes, defendant sustained considerable profits.

COUNT II

VIOLATIONS OF FEDERAL RICO, 18 U.S.C. § 1962(c)

96.    Plaintiffs reallege and incorporate by reference herein the allegations set forth in paragraphs 1 through 95 as if fully restated hereinafter.

97.    This claim is asserted against all defendants.  At all times relevant to this action, defendants EMC and Mahoney were all "persons" as defined in 18 U.S.C. § 1961(3).

98.    At all times relevant to this action, EMC and Mahoney, with the aid of American Latin, engaged in illegal and fraudulent schemes to depress the wages of their workforce, thereby making considerable profits.

99.    Mahoney, EMC, and American Latin constitute an "association in fact" enterprise under 18 U.S.C. § 1961(4).

100.    The members of the enterprise had defined roles, and the enterprise as a whole had an ongoing existence, structure, and hierarchy.

101.    Defendants Mahoney's and EMC's violations of the Immigration and Nationality Act and the federal mail and wire fraud statutes, as detailed in this Complaint, constitute a "pattern of racketeering activity" under 18 U.S.C. § 1961(5).

102.    Defendant Mahoney's and EMC's violations of the Immigration and Nationality Act  and the mail and wire fraud statutes has been ongoing since 2004.

103.    Defendants Mahoney and EMC have been and are presently violating 18 U.S.C. § 1962(c) of RICO, which provides that it "shall be unlawful for any person . . . associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . "

104.    By reason of defendants' RICO violations, plaintiffs were paid depressed wages as a direct result of defendants' Illegal Alien Hiring Scheme and acts of mail and/or wire fraud in furtherance of the scheme. Plaintiffs were the intended and direct victim of defendants' RICO schemes and their injuries of depressed wages were intended and foreseeable. As a direct result of the schemes, defendants sustained considerable profits.

## COUNT III

### RICO CONSPIRACY CLAIM, 18 U.S.C. § 1962(d)

105.    Plaintiffs reallege and incorporate by reference herein the allegations set forth in paragraphs 1 through 104 as if fully restated hereinafter.

106.    Upon information and belief, since 2004 and continuing to the present, each of the defendants unlawfully and willfully combined, conspired, confederated, and agreed between and among each other and with American Latin to violate 18 U.S.C. § 1962(c), by conducting and participating, directly, and indirectly, in the affairs of the enterprises. Defendants each aided and abetted the commission of each violation of the Immigration and Nationality Act and the federal mail and wire fraud statutes, as alleged above.

107.    Each defendant agreed to participate in the conspiracy as evidenced by their active participation in the Illegal Alien Hiring Scheme and acts of mail and wire fraud in furtherance of the scheme.

108.    By reason of defendants' participation in the RICO conspiracy, plaintiffs were paid depressed wages as a direct result of defendants' Illegal Alien Hiring Scheme and acts of mail and/or wire fraud in furtherance of the scheme. Plaintiffs were the intended and direct victim of defendants' RICO schemes and their injuries of depressed wages were intended and foreseeable. As a direct result of the schemes, defendants sustained considerable profits.

COUNT IV

VIOLATIONS OF THE SHERMAN ACT, 15 U.S.C. § 1

109.    Plaintiffs realleged and incorporate by reference herein the allegations set forth in paragraph 1 through 108 as if fully restated hereinafter.

110.    Upon information and belief, since 2004 and continuing to the present, all defendants have engaged in an unlawful contract, combination, and/or conspiracy that unreasonably restrains interstate trade and/or commerce in violation of 15 U.S.C. § 1, by engaging in the Illegal Alien Hiring Scheme.

111.    By employing a workforce of illegal workers, defendants are able to pay their workers lower wages, which keeps their overall costs low thereby allowing them to unfairly underbid their competitors for construction projects for which they are awarded.

112.    By paying their workers lower wages, defendants have an unfair advantage over competitors who do not employ illegal workers, and therefore pay their workers the market rate.  If all competitors in the carpentry market competed on an even playing field, developers and general contractors seeking carpentry work could award contracts based on the overall quality of the work and cost effectiveness.  Companies would have to achieve lower costs to compete through legal means.

113.    Additionally, defendants' illegal actions unreasonably restrain trade and adversely affect interstate commerce in the carpentry market by limiting and restricting plaintiffs' ability to pursue their trade and forcing them to accept wages far below the market rate.  Defendants' actions prohibit plaintiffs' ability to compete with other authorized workers in a market free of the presence of illegal workers who bring down the wages for all workers.

114.    Defendants illegally and artificially inflate the labor pool of

available workers thereby allowing employers to hire their workers not based on skill but on acceptance of lower wages, thus creating a workforce of low paid unskilled workers performing specialized work. Defendants' employment of illegal workers also discourages efforts to advocate for increase wages, overtime pay, and benefits, thereby further restraining competition.

115.    The actions between and amongst the defendants, along in concert with third parties were committed with the intent and purpose to achieve the aforesaid anti-competitive results with the goal of substantial increased profits for defendants.

116.    Defendants' unlawful conduct has a substantial effect on interstate commerce.

117.    As a direct and foreseeable result of defendants' unlawful conduct, plaintiffs have suffered damage and injury to their property. Defendants' unlawful conduct improperly inflated the labor pool of workers available to provide carpentry services in the relevant geographic market. Defendants' unlawful conduct unreasonably restrained trade by limiting and restricting plaintiffs' ability to compete for work. Plaintiffs' injuries are the type that the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.

COUNT V

VIOLATIONS OF NEW YORK'S DONNELLY ACT, General Business Law § 340 *et seq.*

118.    Plaintiffs reallege and incorporate by reference herein the allegations set forth in paragraphs 1 through 117 as if fully restated hereinafter.

119.    Through the conduct alleged herein, including the allegations alleged in paragraphs 109 through 117, defendants have violated N.Y. Gen. Bus. Law § 340 *et seq.*, which declares illegal and void "Every contract, agreement, arrangement or combination whereby . . .

Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained."

120.    As a direct and foreseeable result of defendants' unlawful conduct, plaintiffs have suffered damage and injury to their property. Defendants' unlawful conduct improperly inflated the labor pool of workers available to provide carpentry services in the relevant geographic market. Defendants' unlawful conduct unreasonably restrained trade by limiting and restricting plaintiffs' ability to compete for work. Plaintiffs' injuries are the type that the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.

COUNT VI

VIOLATIONS OF FLSA, 29 U.S.C. § 201 *et seq.*

121.    Plaintiffs reallege and incorporate by reference herein the allegations set forth in paragraphs 1 through 120 as if fully restated hereinafter.

122.    Defendants failed to pay overtime wages to plaintiffs in violation of the Fair Labor Standards Act ("FLSA") and its implementing regulations.

123.    For those weeks in which plaintiffs' paychecks bounced for insufficient funds, defendants failed to pay plaintiffs the minimum wage in violation of FLSA and its implementing regulations.

124.    Defendants' violations of FLSA were willful and intentional.

125.    By reason of defendants' violations, plaintiffs suffered lost wages and interest thereon.

## COUNT VII

## VIOLATIONS OF NEW YORK STATE LABOR LAW

126.    Plainitffs reallege and incorporate by reference herein the allegations set forth in paragraphs 1 through 125 as if fully restated hereinafter.

127.    Defendants failure to pay plaintiffs wages, including overtime pay is in violation of New York State Labor Law §§ 190 *et seq.*, and 650 *et seq.*, and its implementing regulations.

128.    Defendants' violations of New York State's wage and hour laws and regulations were willful and intentional.

129.    By reason of defendants' violations, plaintiffs suffered lost wages and interest thereon.

## V.    PRAYER FOR RELIEF

Plaintiffs demand judgment and other relief, as follows:

A.    As to Counts I, II, and III:

    i.    Judgment in an amount equal to three times the damage sustained by plaintiffs, pursuant to 18 U.S.C. § 1964(c); and

    ii.    Costs and reasonable attorney's fees pursuant to 18 U.S.C. § 1964;

B.    As to Counts IV and V:

    i.    Judgment in an amount equal to three times the damages sustained by plaintiffs, pursuant to 15 U.S.C. § 15 and N.Y. Gen. Bus. Law § 340; and

    ii.    Costs, reasonable attorney's fees, and interest pursuant to 15 U.S.C. § 15 and N.Y. Gen. Bus. Law § 340;

C.    As to Counts VI and VII:

    i.    Awarding plaintiffs compensatory damages, liquidated damages, and prejudgment interest, pursuant 29 U.S.C. § 216 and N.Y. Labor Law § 198; and

    ii.    Costs, reasonable attorney's fees, and interest pursuant to 29 U.S.C. § 216 and N.Y. Labor Law § 198; and

D.    For any other relief the Court deems just and proper.

Dated: April 2, 2008
      New York, New York

Respectfully submitted,

O'DWYER & BERNSTIEN, LLP

By:    _____

Gary Silverman (GS9287)
Attorneys for Plaintiffs
52 Duane Street, 5th Floor
New York, NY  10007
(212) 571-7100

## NOTIFICAÇÃO DE CONSENTIMENTO

Declaro pela presente estar de acordo e consentir em figurar como co-autor num processo instituído consoante as disposições da Lei de Padrões Justos no Trabalho pertinentes a horas extras, escrituração e/ou salário mínimo.

Data: 3/26/08

DANIEL MORAES

## NOTICE OF CONSENT

I hereby agree and consent to be a plaintiff in a lawsuit under the overtime, recordkeeping, and/or minimum wage provisions of the Fair Labor Standards Act.

Dated: _____

DANIEL MORAES

## NOTICE OF CONSENT

I hereby agree and consent to be a plaintiff in a lawsuit under the overtime, recordkeeping, and/or minimum wage provisions of the Fair Labor Standards Act.

Dated: _3-26-08_

ANDRE NICHOLS