UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANDRE NICHOLS, and DANIEL
MORAES,

                  Plaintiffs,

    - against -

MICHAEL T. MAHONEY, EMC CONTRACTING
INC., EMC NEW YORK CONTRACTING, and
EMC of NEW YORK, INC.,

                  Defendants.
------------------------------------------------------------X

ECF CASE
08-CV-3306 (CM)(DCF)


# PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS


O'DWYER & BERNSTIEN, LLP
Gary Silverman (GS9287)
Joy K. Mele (JM0207)
Attorneys for Plaintiffs
52 Duane Street, 5th Floor
New York, New York  10007
(212) 571-7100

## Table of Contents

Page(s)

Table of Authorities  ............................................................................ iii

Statement of the Case ........................................................................... 1

Argument ............................................................................................. 1

Point I

THERE IS NO HEIGHTENED PLEADING STANDARD ..................................... 1

Point II

LEGAL STANDARD ON A MOTION TO DISMISS ......................................... 2

Point III

THE COMPLAINT IS SUFFICIENT TO STATE RICO CLAIMS ......................... 3

    A. VIOLATIONS OF INA § 274 ARE A RICO PREDICATE ACT .................... 3
    B. THE COMPLAINT SUFFICIENTLY PLEADS PROXIMATE CAUSE .............. 9
    C. PLAINTIFFS HAVE STANDING ....................................................... 13
    D. THE COMPLAINT SATISFIED THE "ENTERPRISE" REQUIREMENT ....... 13

Point IV

THE COMPLAINT IS SUFFICIENT TO PLEAD ANTITRUST CLAIMS ............... 16

    A. THERE IS NO HEIGHTENED PLEADING REQUIREMENT .......................... 16
    B. THE COMPLAINT SUFFICIENTLY ALLEGES AN AGREEMENT ................ 17
    C. PLAINTIFFS HAVE STANDING ..................................................... 19

POINT V

THE LABOR LAW CLAIMS ARE SUFFICIENTLY PLED ............................... 22

POINT VI

PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND THE COMPLAINT ............... 24

POINT VII

THE COURT SHOULD RETAIN SUPPLEMENTAL

JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS..........................................25

Conclusion ........................................................................................................25

## Table of Authorities

**Cases**                                                                 **Page(s)**

**AFL – CIO  v. McLaughlin**
    702 F.Supp. 307, 311 (D.D.C. 1988)........................................................ 11

**Air Courier Conference of America v. American Postal Workers Union**
    498 U.S. 517, 111 S.Ct. 913(1991) ........................................................ 19

**Aiv Insurance Co. v. Olmec Medical Supply, Inc.**
    2005 WL 3710370, at *7 (E.D.N.Y. Feb. 22, 2005)..................................... 16

**Anza v. Ideal Steel Supply Corp.**
    547 U.S. 451, 126 S. Ct. 1991 (2006) ........................................... 2, 12, 13

**Arizona Contractors Association, Inc. v. Napolitano**
    2007 WL 4570303, at *6 (D.Ariz. Dec. 21, 2007)..................................... 11

**Arnold Chevrolet, LLC v. Tribune Company**
    418 F.Supp.2d 172, 180 (E.D.N.Y. 2006).............................................. 20

**Associated General Contractors of California, Inc. v. California State Council of Carpenters**
    459 U.S. 519, 537-44, 103 S. Ct. 897, 908-11 (1983) ........................... 21, 22

**Baker v. IBP, Inc.**
    357 F.3d 685 (7th Cir. 2004) ............................................................. 15

**Balaklaw v. Lovell**
    14 F.3d 793, 798 n. 9 (2d Cir. 1994) ............................................... 19, 20

**Bell Atlantic Corp. v. Twombly**
    __ U.S. __, 127 S.Ct. 1955, 1964 (2007) ............................. 1, 2, 16, 17, 19, 23, 24

**Brewer v. Salyer**
    2007 WL 1454276 (E.D.Cal. May 17, 2007)..................................4, 11, 13

**Brown Shoe Co. v. U.S.**
    370 U.S. 294, 320, 82 S. Ct. 1502, 1521 (1962) ....................................19

**Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.**
    429 U.S. 477, 489, 97 S. Ct. 690, 697 (1977) .......................................19

**Cedric Kushner Promotions, Ltd v. King**
    533 U.S. 158, 163, 121 S. Ct. 2087, 2091 (2001) ....................................14

<u>Chance v. Armstrong</u>
        143 F.3d 698, 701 (2d Cir. 1998) .................................................................2

<u>Commercial Cleaning Services, LLC v. Colin Service Systems, Inc.</u>
        271 F.3d 374 (2d Cir. 2001) ........................................ 2, 6, 9, 10, 12, 24

<u>Conley v. Gibson,</u>
        355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957) .............................................1, 2

<u>Cunningham v. Offshore Specialty Fabrications, Inc.</u>
        543 F.Supp.2d 614, 627 (E.D.Texas 2008) ........................... 5, 10, 12, 13

<u>Davis v. Lenox Hill Hospital</u>
        2004 WL 1926086 (S.D.N.Y. Aug. 31, 2004)........................................24

<u>Decanas v. Bica</u>
        424 U.S. 351, 356-57, 96 S. Ct. 933, 937 (1976).....................................11

<u>Donovan v. Kaszycki & Sons Contractors, Inc.</u>
        599 F.Supp. 860, 870 (D.C.N.Y. 1984).................................................24

<u>Dresses for Less, Inc. v. CIT Group/Commercial Services, Inc.</u>
        2002 WL 31164482, at *6 (S.D.N.Y. Sept. 9, 2002) ..............................16

<u>Erickson v. Pardus</u>
        __ U.S. __, 127 S.Ct. 2197, 2200 (2007) ..................................................2

<u>Fears v. Wilhelmina Model Agency, Inc.</u>
        2004 WL 594396, at *3 (S.D.N.Y. March 23, 2004)..............................18

<u>Fresh Meadow Food Services v. RB 175 Corp.</u>
        2008 WL 2566731, at *2 (2d Cir. June 24, 2008) ...................................2

<u>Geisler v. Petrocelli</u>
        616 F.2d. 636, 639 (2d Cir. 1980) ........................................................ 3

<u>George Haug Co. v. Rolls Royce Motor Cars, Inc.</u>
        148 F.3d 136, 139 (2d Cir. 1998) ........................................................16

<u>Hager v. ABX Air, Inc.</u>
        2008 WL 819293, at *11 (S.D.Ohio March 25, 2008) .......................4, 7

<u>Hernandez v. Balakian</u>
        480 F.Supp.2d 1198, 1206 (E.D.Cal. 2007)..........................................4, 7

<u>Holmes v. Securities Investor Protection Corporation</u>
 503 U.S. 258, 268, 112 S. Ct. 1311, 1317 (1992) .................... 9, 10, 11, 12, 13, 21

<u>Hospital Building. Co. v. Trustees of Rex Hospital</u>
 425 U.S. 738, 746, 96 S. Ct. 1848 (1976) ........................................................ 16, 17

<u>Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.</u>
 253 F.Supp.2d 262, 272 (D. Conn. 2003) ............................................................. 20

<u>In re Currency Conversion Fee Antitrust Litigation</u>
 2006 WL 3247396, at *3-4 (S.D.N.Y. Nov. 8, 2006) ............................ 24

<u>Iqbal v. Hasty</u>
 490 F.3d 143, 157-58 (2d Cir.2007) ............................................................ 2, 3, 24

<u>Jovanovic v. City of New York</u>
 2006 WL 2411541 * 5 (S.D.N.Y. August 17, 2006) ................................................ 3

<u>Klickads, Inc. v. Real Estate Board of New York, Inc.</u>
 2007 WL 2254721 * 3 (S.D.N.Y. Aug. 6, 2007) .................................................... 18

<u>Lerner v. Fleet Bank, N.A.</u>
 318 F.3d 113 (2d Cir. 2003) ............................................................................... 2, 3

<u>Lujan v. Defenders of Wildlife</u>
 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992) ..................................................... 21

<u>Martin v. Malcolm Pirnie, Inc.</u>
 949 F.2d 611, 614 (2d Cir. 1991) ........................................................................ 23

<u>McCagg v. Marquis Jet Partners, Inc.</u>
 2007 WL 2454192, at *4 (S.D.N.Y. Aug. 29, 2007) ............................................. 22

<u>Milanese v. Rust-Oleum Corp.</u>
 244 F.3d 104, 110 (2d Cir. 2001) ........................................................................ 25

<u>Monsanto Co. v. Spray-Rite Service Corp.</u>
 465 U.S. 752, 768, 104 S. Ct. 1464, 1473 (1984) ................................................ 18

<u>Mendoza v. Zirkle Fruit Co.</u>
 2000 WL 33225470 * 3 (E.D. Wash. Sept. 27, 2000) ........................ 6, 10, 22, 23

<u>Moses v. Martin</u>
 360 F.Supp.2d 533 (S.D.N.Y. 2004) ................................................................... 14

<u>National Association of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories, Division of/and American Home Products Corp.</u>

850 F.2d 904, 912 (2d Cir. 1988) ..........................................................................21

Nizamuddowlah v. Bengal Cabaret, Inc.
    92 Misc.2d 220, 222, 399 N.Y.S.2d 854, 856 (N.Y. Sup. 1977) ............................11

Northern Pacific Railway v. United States
    356 U.S. 1, 4, 78 S. Ct. 514, 517 (1958) ..............................................................20

Official Publications, Inc. v. Kable News Co.
    884 F.2d 664, 668 (2d Cir. 1989) ..........................................................................24

Phelps v. Kapnolas
    308 F.3d 180, 186 (2d Cir. 2002) ............................................................................2

Ricciuti v. N.Y.C. Transit Authority
    941 F.2d 119, 123 (2d Cir. 1991) ......................................................................3, 24

Ronzani v. Sanofi, S.A.
    899 F.2d 195, 198 (2d Cir. 1990) ..........................................................................25

Ross v. Bank of America, N.A.
    524 F.3d 217, 223 n. 1 (2d Cir. 2008) .................................................................. 21

Scheuer v. Rhodes
    416 U.S. 232, 236, 94 S. Ct. 1683 (1974) ..............................................................2

Standardbred Owners Ass'n v. Roosevelt Raceway Assocs., L.P.
    985 F.2d 102, 104 (2d Cir. 1993) ..........................................................................13

Sure-Tan, Inc. v. NLRB
    456 U.S. 883, 893, 104 S. Ct. 2803, 2809 (1984) ................................................11

Swierkiewicz v. Sorema N.A.
    534 U.S. 506, 513, 122 S. Ct. 992, 998 (2002) ......................................................1

System Management, Inc. v. Loiselle
    91 F.Supp.2d 401 (D.Mass. 2000) .............................................................4, 5, 6, 7, 8

Todd v. Exxon Corp.
    275 F.3d 191, 198 (2d Cir. 2001) ......................................................................2, 16

Tomney v. International Center for the Disabled
    2003 WL 1990532, at *5 (S.D.N.Y. April 29, 2003)..............................................23

Tops Markets, Inc. v. Quality Meats, Inc.
    142 F.3d 90, 95-96 (2d Cir. 1998) ........................................................................17

**Trollinger v. Tyson Foods, Inc.**
  2007 WL 1574275, at *4-5 (E.D.Tenn. May 29,2007)..................... 5, 6, 7, 10, 16

**U.S. v. Ganim**
  225 F. Supp. 2d 145, 162 (D. Conn. 2002).......................................................... 15

**U.S. v. Kim**
  193 F.3d 567, 573 (2d Cir. 1999) ..................................................................... 4, 8

**U.S. v. Shum**
  496 F. 3d 390 (5th Cir. 2007) ............................................................................... 8

**U.S. Information Systems, Inc. v. International Brotherhood of Electrical Workers Local Union Number 3, AFL-CIO**
  2002 WL 91625, at *4 (S.D.N.Y. Jan. 23, 2002) ................................................. 19

**Vaicaitiene v. Partners in Care Inc.**
  2005 WL 1593053 (S.D.N.Y. July 6, 2005)........................................................ 24

**Velez v. Vassallo**
  203 F.Supp.2d 312, 330 (S.D.N.Y. 2002) ........................................................... 23

**Wade v. Johnson Controls, Inc.**
  693 F.2d 19, 21 (2d Cir. 1982) ........................................................................... 23

**Williams v. Mohawk Industries, Inc.**
  314 F.Supp.2d 1333, 1346 (N.D.Ga. 2004) ................................... 6, 10, 12, 13, 16

**Zito v. Leasecomm Corp.**
  2004 WL 2211650, at *7 (S.D.N.Y. September 30, 2004)........................... 15, 16

## STATEMENT OF THE CASE

Plaintiffs submit this memorandum of law in opposition to defendants' motion to dismiss.

## ARGUMENT

## POINT I

## THERE IS NO HEIGHTENED PLEADING STANDARD

It is clearly established law that "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957). The United States Supreme Court has long held that "all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 47, 78 S. Ct. at 103 (citing Fed.R.Civ.P. 8(a)); see also Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964 (2007). The "simplified pleading standard" in Rule 8(a) applies to all civil cases. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513, 122 S. Ct. 992, 998 (2002); see also, Bell Atlantic, 127 S. Ct. at 1964 (reaffirming the holding in Swierkiewicz). The simplified pleading standard of Rule 8 "relies on liberal discovery rules and summary judgment motion to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz, 534 U.S. at 512, 122 S. Ct. at 998.

Contrary to that well-established law, defendants, citing the recent Supreme Court decision in Bell Atlantic, 127 S. Ct. 1955 (2007), argue that plaintiffs' Complaint requires a heightened level of "specificity". (Defs. Mem., p. 16) [1] However, just two weeks after issuing its opinion in Bell Atlantic, the Supreme Court quoted it for the long-held traditional proposition that "[s]pecific facts

---

[1] Defendants also argue that plaintiffs' RICO claims based on fraud as a predicate act fail to meet the heightened pleading requirements under Rule 9(b). (Defs. Mem. P. 11) However, as was explained in plaintiff's RICO statement, plaintiffs allege that defendants used the mail and/or wires to further the Illegal Alien Hiring Scheme, not as predicate acts. (RICO statement, p.6) To the extent the complaint alleges violations of mail and/or wire fraud as a predicate act, plaintiffs seek leave to amend the complaint.

are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2200 (2007) (quoting Bell Atlantic, 127 S. Ct. 1955 (2007)). Furthermore, the Supreme Court reaffirmed the long established principle that "there is no heightened pleading requirement'". Bell Atlantic, 127 S.Ct. 1955 (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). The Supreme Court has adopted a flexible "'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (italics included).

## POINT II

## LEGAL STANDARD ON A MOTION TO DISMISS

On a motion to dismiss, the court must accept as true all material facts alleged in the complaint, and draw all reasonable inferences in plaintiff's favor. Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 126 S. Ct. 1991 (2006); Iqbal, 490 F.3d at 152; Lerner v. Fleet Bank, N.A., 318 F.3d 113 (2d Cir. 2003); Commercial Cleaning Services, LLC v. Colin Services Systems, Inc., 271 F.3d 374 (2d Cir. 2001). "The fundamental issue at the dismissal stage 'is not whether a plaintiff is likely to prevail ultimately, but whether a claimant is entitled to offer evidence to support the claims.'" Phelps v. Kapnolas, 308 F.3d 180, 184-85 (2d Cir. 2002) (quoting Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998)); see also Fresh Meadow Food Services v. RB 175 Corp., 2008 WL 2566731, at *2 (2d Cir. June 24, 2008); Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683 (1974). Indeed, even when it appears "on the face of the pleading that a recovery is very remote and unlikely . . . that is not the test." Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is reviewed under the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6).

<u>Lerner v. Fleet Bank, N.A.</u>, 318 F.3d 113, 128 (2d Cir. 2003).

Plaintiffs have sufficiently pled facts in support of their claims against defendants which provide a "fair understanding of what the [plaintiffs are] complaining about and to know whether there is a legal basis for recovery." <u>Ricciuti v. N.Y.C. Transit Authority</u>, 941 F.2d 119, 123 (2d Cir. 1991). That is all that the rules require. Fed.R.Civ.Proc. 8(a); <u>see also</u> <u>Iqbal</u>, 490 F.3d at 152 ("a heightened pleading rule may not be imposed"). Plaintiffs are not required to prove their case at the pleading state, and in fact, "[t]he pleading of evidence should be avoided." <u>Ricciuti</u>, 941 F.2d at 123-24 (quoting 2A <u>Moore's Federal Practice</u> ¶ 8.13, at 8-68). Instead, the court's duty "is to merely assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." <u>Geisler v. Petrocelli</u>, 616 F.2d. 636, 639 (2d Cir. 1980); <u>see also</u> <u>Jovanovic v. City of New York</u>, 2006 WL 2411541, at *5 (S.D.N.Y. August 17, 2006) ("On a motion to dismiss, the plaintiff is not required to offer direct evidence of the alleged wrongful conduct."). The motion to dismiss should be denied.

## POINT III

## THE COMPLAINT IS SUFFICIENT TO STATE RICO CLAIMS

A.    <u>Violations of INA § 274 are a RICO Predicate Act</u>

Plaintiffs' RICO claims are predicated on violations of § 274 of the Immigration and Nationality Act ("INA"), which prohibits any person from knowingly hiring for employment at least 10 individuals during any 12-month period, with actual knowledge that the individuals are aliens as defined in § 274(a)(3)(B). 8 U.S.C. § 1324. Defendants erroneously argue that plaintiffs have alleged violations of § 274A of the INA. (Defs. Mem. p. 5) Section 274A, which is a separate section from § 274, is not a RICO predicate act. Defendants claim that plaintiffs merely claim a violation of § 274A of the INA which prohibits a person or other entity "to hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien . .

. with respect to such employment." (Id. at 7)  See also 8 U.S.C. § 1324a(a)(1)(A).

Defendants' argument has been addressed and rejected by several courts.  Hager v. ABX Air, Inc., 2008 WL 819293, at *11 (S.D. Ohio Mar. 25, 2008), Brewer v. Salyer, 2007 WL 1454276, at *5 (E.D. Cal. May 17, 2007) ("the fact that the conduct alleged . . . violates IRCA [which prohibits knowingly employing unauthorized aliens] does not preclude that same conduct from also violating INA."); Hernandez v. Balakian, 480 F.Supp.2d 1198 (E.D. Cal. 2007).  Similar to the defendants in this action, the Hager defendants argued that plaintiff's claim that defendants knowingly hired unauthorized aliens only constituted a violation of § 1324a, entitled "Unlawful employment of aliens", and that § 1324a is not defined as "racketeering activity" under RICO. Hager, 2008 WL 819293, at *11.

In rejecting defendants' argument as "not well founded", the court stated that "'the fact that Congress has enacted two sections encompassing similar conduct but prescribing different penalties does not compel a conclusion that one statute was meant to limit, repeal, or affect enforcement of the other.'"  Id. (quoting Brewer, 2007 WL 1454276, at *5 (E.D. Cal. May 17, 2007) (quoting U.S. v. Kim, 193 F.3d 567, 573 (2d Cir. 1999) (facts constituting violations of § 1324a may also demonstrate a violation of § 1324(a)(3)).

Similarly, in the instant case, merely because the facts alleged in the Complaint may also constitute a violation of § 274A of the INA does not preclude the same facts from serving as the basis to support a violation of § 274, which is a predicate RICO violation.

Defendants also cite to System Management, Inc. v. Loiselle, 91 F.Supp.2d 401 (D. Mass. 2000), for the proposition that to state a RICO claim on the basis of a violation of § 274 of the INA, plaintiffs must allege that defendants had knowledge of how the aliens were brought into the U.S., and that they were brought into the U.S. in violation of the employment provision. (Defs. Mem. pp. 6-7)  As the first decision deciding a RICO claim in which a plaintiff alleged violations of § 274 as

4

the predicate act, the Loiselle decision has been the subject of much interpretation and disagreement

by the handful of courts that have decided these cases since the decision was issued in 2000.

The plaintiffs in Loiselle claimed injury to their business or property as a result, in part, of

defendant's violation of 8 U.S.C. § 1324(a)(3)(A), which prohibits knowingly hiring at least ten

individuals with knowledge that they were "aliens" described in subparagraph (B). Loiselle, 91

F.Supp.2d at 408. Subparagraph (B) describes an alien as an (i) unauthorized alien as defined in §

1324a(h)(3), and (ii) has been brought into the U.S. in violation of this subsection. 8 U.S.C. §

1324(a)(3)(B). Section 1324a(h)(3) defines an "unauthorized alien" as an alien who, at the time of

employment, is either (A) not lawfully admitted for permanent residence, or (B) is not authorized

to be so employed by this chapter or by the Attorney General. 8 U.S.C. 1324a(h)(3).

The court in Loiselle interpreted subparagraph (B) of § 1324(a)(3) to mean that "to state a

civil RICO claim on the basis of a violation of this subsection of Title 8, the Plaintiffs must allege

that [defendant] had knowledge of how the aliens had been brought into the United States and that

they were *brought* into the United States in violation of this employment provision." 91 F.Supp.2d

401, 408 (D.Mass 2000) (italics in original). The Court dismissed the complaint because plaintiffs

had "not set forth any factual allegation as to how the aliens entered the country or whether the

defendant had any knowledge of the purpose for which they entered." Id.

Multiple courts have rejected the heightened pleading requirement set forth in Loiselle, and

instead have "held that more liberal pleading requirements of Fed.R.Civ.P. 8 apply to 'a RICO

action involving non-fraud, immigration offenses as predicate activities, and not heightened

pleading requirements of Rule 9(b).'" Cunningham v. Offshore Specialty Fabrications, Inc., 543

F.Supp.2d 614, 627 (E.D. Texas 2008) (quoting Trollinger v. Tyson Foods, Inc., 2007 WL

1574275, at *4-5 (E.D. Tenn. May 29, 2007)). The Court in Cunningham rejected defendants'

argument that plaintiffs must allege facts with respect to how the aliens entered the U.S., and that

the defendants had knowledge of the purpose for which the aliens entered.  543 F.Supp.2d at 627.
The court accepted the position taken by the Trollinger court that "for a plaintiff to plead a violation
of the statute prohibiting employment of unauthorized aliens, as a predicate act in a RICO case, the
plaintiff must simply allege that the aliens were brought into the United States for the purpose of
illegal employment, but there is no requirement that the employer must have brought the aliens into
this country." Id. (quoting Trollinger, 2007 WL 1574275, at *6); see also Williams v. Mohawk
Industries, Inc., 314 F.Supp.2d 1333, 1346(N.D. Ga. 2004) (to plead a violation of § 1324(a)(3),
there is no requirement that the employer must have brought the aliens into this country), rev'd on
other grounds, 465 F.3d 1277 (11th Cir. 2006), cert. den., 127 S.Ct. 1381 (2007).

Similarly, the plaintiffs in Mendoza alleged that defendants violated § 1324 by hiring illegal
aliens "with actual knowledge of the aliens' illegal status and with knowledge that the aliens were
either smuggled into the United States or harbored once in the United States . . ." Mendoza v.
Zirkle Fruit Co., 2000 WL 33225470, at *3 (E.D. Wash. Sept. 27, 2000), rev'd on other grounds,
301 F.3d 1163 (9th Cir. 2002) (reversing the District Court's dismissal of the RICO claim).  The
court found that a common sense understanding of "smuggled" is "unlawfully brought" and
concluded that "plaintiffs have adequately pled a predicate act under RICO by alleging that the
defendants knew that some of their workers were unlawfully brought into the United States." Id. at
*4.  Citing Rule 8's liberal pleading standard, the court further held plaintiffs do not need to allege
in detail how and when the illegal workers were smuggled into the U.S., and how defendants had
"actual knowledge." Id.

Citing Loiselle, the Second Circuit, in a similar case involving a competitor who brought
suit under RICO alleging that the defendant hired undocumented aliens in violation of § 274, held
that an essential element of a § 1324(a) claim is that the defendant "had actual knowledge that the
illegal aliens it hired were brought into the country in violation of the statute." Commercial

Cleaning Services, LLC v. Colin Service Systems, Inc., 271 F.3d 374, 387 (2d Cir. 2001).
Although the Court cited Loiselle, it did not directly address the issue of whether plaintiffs need to
allege that defendants had knowledge of how the aliens had been brought into the U.S., and that
they were brought into the U.S. in violation of the statute.[2] Id. at 387.

Courts have also held that plaintiffs can allege facts, either directly or inferentially, "that
indicates a subjective belief on the part of Defendants it employed illegal aliens that had been
brought into the United States illegally. The Court must consider the Complaint as a whole and not
limit itself to isolated portions of the Complaint, and the Court must endeavor to give meaning to
every word of the Complaint." Trollinger, 2007 WL 1574275, at * 6; see also Hager v. ABX Air,
Inc., 2008 WL 819293, at *12-13 (S.D. Ohio Mar. 25, 2008) (Can reasonably infer from the alleged
facts that defendant knew that the company that provided them with workers was bringing them into
the U.S. illegally.). The examination must be conducted "in the context of the commonly
understood problem with illegal immigration in the country." Trollinger, 2007 WL 1574275, at *6.

Examined in its entirety, the Complaint in the instant action contains allegations, directly
and inferentially, sufficient to find that for purposes of defendants' motion to dismiss, defendants
knew that the illegal aliens they employed were brought into the U.S. in violation of § 1324(a). See
Hernandez, 480 F.Supp.2d at 1206. Plaintiffs allege that contractors respond to the competitive
pressures of the construction industry by exploiting the available population of illegal workers here
in the U.S. (Compl. ¶ 16.) Within this context, plaintiffs allege that defendants hired a workforce
comprised substantially of workers who were unauthorized to work in the U.S. for the express
purpose of depressing the wages of their entire workforce. (Id. ¶ 1, 33, 35, 40-41.) Plaintiffs allege
that EMC routinely and purposely did not ask employees for proof of employment eligibility when
hired, because they knew the workers were not authorized to work in the U.S, and/or would

---

[2] The court's only reference to Loiselle's narrow holding was in its explanatory parenthetical

knowingly and recklessly accept false documents as proof of eligibility.  (Id. ¶ 21, 41.)  Plaintiffs allege that on several occasions EMC shut down job sites, because they feared raids by the Immigration and Nationality Service. (Id. ¶ 22.)  Plaintiffs allege that EMC held meetings informing the workers of an attorney who could help them obtain legal work papers.  (Id. ¶ 23.)  Plaintiffs allege EMC entered into a business relationship with American Latin, which provided EMC with a pool of illegal workers.  (Id. ¶ 26.)  Plaintiffs allege that EMC were and continues to be employers and/or joint employers with American Latin.  (Id. ¶ 27.)  Plaintiffs allege that American Latin knew or had reason to know that the workers they provided to EMC were not authorized to work in the U.S., and that EMC was aware of this.  (Id. ¶ 28-29.)  Plaintiffs allege that knowing their workers were illegal, EMC and American Latin knowingly engaged in a scheme in which they knowingly falsely attested to having complied with the I-9 requirements.  (Id. ¶ 40.)

Accepting these allegations as true, and within the context of the problem of illegal immigration in this country, it is plausible to infer at this stage in the proceeding, that defendants knew that the illegal aliens they knowingly hired had been brought into the U.S. in violation of § 1324(a).  Moreover, plaintiffs have alleged sufficient facts to conclude that defendants harbored the illegal aliens they hired.  The Second Circuit in U.S. v. Kim, 193 F.3d 567 (2d Cir. 1999), affirmed an employer's conviction for harboring in violation of § 1324 when the employer knowingly or recklessly employed illegal aliens not authorized to work in the U.S. and took steps to help the aliens avoid detection by the authorities.  See also U.S. v. Shum, 496 F.3d 390 (5th Cir. 2007) (defendant's employment of illegal aliens, not filing social security paperwork on the aliens, and providing aliens with false identification cards were sufficient evidence to support conviction of concealing, harboring, or shielding aliens in violation of § 1324).

In Kim, the employer hired aliens knowing they were not authorized to work in the U.S.,

---

of Loiselle and in a footnote addressing statements made by plaintiff during oral argument.

instructed workers to consult an attorney to "find a way to make [his] papers", knowingly accepted false proof of work authorization, and falsely completed or directed others to falsely complete I-9 forms. Id. at 570-572. Similarly, in the instant case, defendants' conduct of employing illegal aliens, intentionally not asking for proof of employment eligibility, knowingly and recklessly accepting false documents as proof of eligibility, shutting down job sites out of fear of a raid by INS, and informing workers of an attorney who can help them get legal work papers, is sufficient evidence to show that defendants harbored the illegal aliens to avoid their detection by the authorities in violation of § 1324.

However, should the court find that plaintiffs have insufficiently pled that defendants had actual knowledge that the aliens they hired were brought into the country in violation of the statute, plaintiffs' failure to plead this element is not fatal, and plaintiffs seek leave to amend the complaint to cure the pleading defect. Commercial Cleaning, 271 F.3d at 387 (plaintiffs' failure to plead an essential element of the RICO predicate offense is not fatal, and can be cured by repleading).

B.   The Complaint Sufficiently Pleads Proximate Cause

Under § 1964(c), "[a]ny person injured in his business or property by reason of a violation of section 1962 . . . may sue . . ." 18 U.S.C. § 1964(c). To fulfill the "by reason of" requirement, a plaintiff must show "that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well." Holmes v. Securities Investor Protection Corporation, 503 U.S. 258, 268, 112 S. Ct. 1311, 1317 (1992). "RICO's use of the clause 'by reason of' has been held to limit standing to those plaintiffs who allege that the asserted RICO violation was the legal, or proximate, cause of their injury, as well as the logical, or 'but for' cause." Commercial Cleaning, 271 F.3d at 380. The Supreme Court in Holmes "applied a proximate cause test requiring a 'direct relation between the injury asserted and the injurious conduct alleged.'" Commercial Cleaning, 271 F.3d at 381 (quoting Holmes, 503 U.S. at 268, 112 S. Ct. 1311).

The Supreme Court identified three policy factors for limiting RICO cases to those plaintiffs who could allege a direct injury. First, "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors." Holmes, 503 U.S. at 269, 112 S. Ct. at 1318. Second, "recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries." Id. Third, those directly injured could "generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely." Id. at 269-70, 112 S. Ct. at 1318-19.

As to the first factor, defendants' claim that plaintiffs cannot allege proximate cause because their depressed wages "may be a product of a myriad of factors." (Defs. Mem. p. 13) This argument has been rejected by several circuit and district courts addressing similar allegations. Williams v. Mohawk Industries, Inc., 465 F.3d 1277, 1289 (11th Cir. 2006) (rejecting defendant's argument "that other economic factors contribute to the plaintiffs' wages, that illegal hiring is just one of myriad factors affecting wages . . ."), cert. den., 127 S.Ct. 1381 (2007); Trollinger v. Tyson Foods, Inc., 370 F.3d 602, 620 (6th Cir. 2004) ("plaintiffs need not show that Tyson's conduct was the sole cause of their injury in order to establish proximate cause . . ."); Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1170 (9th Cir. 2002) (applying the reasoning of Commercial Cleaning to hold that the documented employees were the direct victims of defendants' illegal hiring scheme of depressing wages by hiring undocumented workers); Commercial Cleaning, 271 F.3d at 382 ("If plaintiffs can substantiate their claims, the plaintiffs may well show that they lost contracts directly because of the cost savings defendants realized through its scheme to employ illegal workers."); Cunningham v. Offshore Specialty Fabrications, Inc., 543 F.Supp.2d 614, (E.D. Texas 2008) (citing favorably the holdings in Trollinger, Mendoza, and Mohawk, and holding that plaintiffs were

directly injured by defendants' hiring of illegal workers); Brewer v. Salyer, 2007 WL 1454276, at *13 (E.D.Cal. May 17, 2007) ("There are many factors that affect the wages [plaintiffs] . . . earn, and Plaintiff need not allege all of them. It is sufficient at the motion to dismiss stage that he has alleged that the scheme depressed their wages.").

Furthermore, courts have long recognized the correlation between hiring illegal workers and depression of wages. See DeCanas v. Bica, 424 U.S. 351, 356-57, 96 S. Ct. 933, 937 (1976) ("acceptance by illegal aliens of jobs on substandard terms as to wages and working conditions can seriously depress wage scales and working conditions of citizens and legally admitted aliens"); Sure-Tan, Inc. v. NLRB, 456 U.S. 883, 893, 104 S. Ct. 2803, 2809 (1984) (immigrant aliens are admitted to work in the U.S. "only if they 'will not adversely affect the wages and working conditions of the workers in the United States similarly employed.'" (citation omitted)); Nizamuddowlah v. Bengal Cabaret, Inc., 92 Misc.2d 220, 222, 399 N.Y.S.2d 854, 856 (N.Y. Sup. 1977) (quoting DeCanas, 424 U.S. 351, 356-57, 96 S. Ct. 933, 937 (1976)); AFL-CIO v. McLaughlin, 702 F.Supp. 307, 311 (D.D.C. 1988) (citing to studies showing a direct relation between illegal workers and low wages); Arizona Contractors Association, Inc. v. Napolitano, 2007 WL 4570303, at *6 (D.Ariz. Dec. 21, 2007) ("Those who suffer the most from unauthorized alien labor are . . . the competing lawful workers, . . . who strain in individual competition and in a wage economy depressed by the great and expanding number of people who will work for less.").

The Complaint alleges that plaintiffs' depressed wages are a direct result of defendants' Illegal Alien Hiring Scheme. Assuming the allegations are true, plaintiffs have alleged a direct relation between plaintiffs' injury and defendants' RICO violations.

Regarding the second policy factor, "[t]he Holmes Court warned that if courts did not limit recovery to injuries directly related to the RICO violation, they would be forced to devise complicated rules apportioning damages among plaintiffs at different degrees of separation from the

11

violative acts alleged." Commercial Cleaning, 271 F.3d at 383. "[T]he concern of Holmes was that a violator might be obligated to pay double compensation if required to compensate those directly injured and those injured by the injury to those directly injured. It was not that a violator might be obligated to compensate two or more different classes of plaintiffs, each of which suffered a different concrete injury, proximately caused by the violation." Id. at 384. That concern is not at issue in the instant case. Plaintiffs do not allege an injury that is derivative of an injury to others. Plaintiffs are not arguing that they are entitled to damages as a result of injuries suffered by a third party. On the contrary, plaintiffs claim they are the direct victims of defendants' illegal acts.

As to the final Holmes factor, defendants argue that it is the U.S. government who is the directly affected party and therefore should be counted on to "take any legal action that is necessary." (Defs' Mem. p. 13) However, "the public authority as more direct victim" argument has been rejected by the Second Circuit as well as by other courts. Commercial Cleaning, 271 F.3d at 385 ("If the existence of a public authority that could prosecute a claim against putative RICO defendants meant that the plaintiff is too remote under Holmes, then no private cause of action could ever be maintained, for every RICO predicate offense, as well as the RICO enterprise itself, is separately prosecutable by the government."); Mohawk, 465 F.3d at 1290 ("[i]t is consistent with civil RICO's purpose – to expand enforcement beyond federal prosecutors with limited public resources – to turn victims . . . into prosecutors as private attorneys general seeking to eliminate illegal hiring activity by their own employer."); Cunningham., 543 F.Supp.2d at 639 ("the issue of whether the U.S. government is a more direct victim does not preclude Plaintiffs' cause of action").

In Holmes, the two broker-dealers were the direct victims of defendants' stock manipulation, and they could be expected to sue. Here, in contrast, there is no one else who could be counted on or able to sue. Defendants' argument must fail in light of Commercial Cleaning.

The Supreme Court's holding in Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 126 S. Ct.

12

1991 (2006) does not mandate dismissal of plaintiffs' complaint.  Since the Supreme Court issued

its decision in Anza, three courts have addressed the issue of proximate cause as it relates to RICO

actions alleging violations of the § 274 of the INA on a motion to dismiss.  Williams v. Mohawk

Industries, Inc., 465 F.3d 1277, 1289 (11th Cir. 2006) ("Mohawk's widespread scheme of

knowingly hiring and harboring illegal workers has the purpose and direct result of depressing the

wages paid to the plaintiffs."), cert. den., 127 S. Ct. 1381 (2007); Cunningham, 543 F.Supp.2d at

639 ("Plaintiffs are directly injured by the depressed wages and the . . . Complaint does not allege

an immigration violation that victimized the United States Department of Homeland Defense.");

Brewer v. Salyer, 2007 WL 1454276, at *14 (E.D. Cal. May 17, 2007) (Plaintiff "has alleged that

the hiring of undocumented workers proximately caused injury by depressing wages.").  In all three

cases, the court found plaintiffs sufficiently pled proximate cause to survive the motion to dismiss.

       The facts alleged in the Complaint in the instant case satisfies the Holmes three policy

considerations, and sufficiently states a direct proximate relationship between the plaintiffs' injury

and defendants' pattern of racketeering activity.  Plaintiffs have pled proximate cause sufficient to

survive the motion to dismiss.

C.     Plaintiffs Have Standing

       To have standing under RICO, the plaintiff must allege "that the defendant's violations were

the proximate cause of plaintiff's injury, i.e. that there was a direct relationship between the

plaintiff's injury and the defendant's injurious conduct."  Standardbred Owners Ass'n v. Roosevelt

Raceway Assocs., L.P., 985 F.2d 102, 104 (2d Cir. 1993).  As discussed above, plaintiffs have

sufficiently pled proximate cause, and therefore have standing under RICO.

D.     The Complaint Satisfied the "Enterprise" Requirement

       Defendants incorrectly argue that plaintiffs allege that defendants "EMC is the enterprise

and the corporate entity conducting the affairs of the enterprise. . . ." (Defs. Mem. p. 14) On the

contrary, the complaint fully complies with § 1962(c)'s requirement that a plaintiff must show the existence of 2 separate entities, a person and a distinct enterprise, the affairs of which that person improperly conducts. 18 U.S.C. § 1962(c). Plaintiffs allege that the EMC entities comprise the enterprise, and defendant Michael Mahoney, the principal of the EMC entities, is the "person" conducting the affairs of the EMC enterprise through a pattern of racketeering activity. (Compl. ¶¶ 91-93.)

The separate entities in this case are similar to the defendants in Cedric Kushner Promotions, Ltd. v. King, in which the Supreme Court held that "[t]he corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more 'separateness' than that." 533 U.S. 158, 163, 121 S. Ct. 2087, 2091 (2001). In Cedric Kushner, the petitioner sued Don King, the president and sole shareholder of the RICO enterprise Don King Productions, alleging that King conducted the affairs of Don King Productions through a pattern of racketeering activity. In reversing the Second Circuit's affirmation of the District Court's dismissal of the complaint, the Court held that "the employee and the corporation are different 'persons,' even where the employee is the corporation's sole owner." Id. at 163, 121 S. Ct. at 2091.

This same issue was addressed in Moses v. Martin, 360 F.Supp.2d 533 (S.D.N.Y. 2004), in which the plaintiff sued Deborah Martin Agency, Inc. ("DMA"), and its principal Deborah Martin. Similar to the holding in Cedric Kushner, the Court in Moses found that plaintiff "met the distinctness requirement by charging Donna Martin as the "person" associated with or employed by DMA, the "enterprise," an incorporated entity of which Martin was the 'exclusive Principal, Owner and President.'" Id. at 546.

Plaintiffs alternatively allege an association-in-fact enterprise comprising of defendants EMC, American Latin, and defendant Michael Mahoney. The complaint alleges that EMC entered

14

into a business relationship with American Latin whereby American Latin provided illegal workers to EMC. (Compl. ¶ 25-26)  The complaint alleges that American Latin, which is not a party to the action, supplied and continues to supply EMC with a pool of illegal workers. (Id. § 63.)  American Latin is a separate legal entity under separate ownership from EMC. (Id. at 68.)  The complaint further alleges that the illegal workers supplied by American Latin took direction from EMC foreman and supervisors, but were paid by American Latin. (Id. ¶ at 66.)  The complaint alleges that EMC, Mahoney, and American Latin all "share the common purpose of obtaining illegal workers for employment by EMC." (Id. at 69.)  Furthermore, the complaint alleges that EMC, Mahoney, and American Latin all reap financial benefits from their membership in the enterprise.  American Latin is rewarded financially for each illegal worker they provide to EMC, enabling EMC and Mahoney to reduce the wages of their workforce, thereby reaping a large economic benefit (Id. at 70-71.)

Defendants cite one case, Baker v. IBP, Inc., 357 F.3d 685 (7th Cir. 2004), in support of their argument that plaintiff's association-in-fact enterprise fails to satisfy "RICO's strictures". (Defs. Mem., pp. 14-15)  The court in Baker affirmed the District Court's dismissal of the complaint, in part on the ground that the members of the association-in-fact enterprise alleged by plaintiffs failed to have a common purpose. Id. at 691.

Defendants' argument that plaintiffs have failed to prove the existence of an association-in-fact enterprise is premature at this early stage in the proceeding. See U.S. v. Ganim, 225 F.Supp.2d 145, 162 (D.Conn. 2002) ("[w]hile [defendant] is free to argue after conclusion of the Government's case in chief that it has failed to prove the existence of an enterprise . . . such arguments are premature as a basis for a motion to dismiss"); Zito v. Leasecomm Corp., 2004 WL 2211650, at *7 (S.D.N.Y. Sept. 30, 2004) ("the question of whether a group of individuals or corporations exhibit such organization and common purpose is ordinarily one of fact"); see also

Trollinger, 370 F.3d at 621 (the issue of whether defendant and its co-conspirators constituted an enterprise under RICO should be resolved in a motion for summary judgment).

Notwithstanding defendants' untimely argument, plaintiffs have sufficiently pled an association-in-fact enterprise. Plaintiffs have alleged an enterprise comprised of members "associated together for a common purpose." Zito, 2004 WL 2211650, at *8; see also Williams v. Mohawk Industries, Inc., 465 F.3d 1277, 1285-86 (11th Cir. 2006) ("there has never been any requirement that the 'common purpose' of the enterprise be the sole purpose of each and every member of the enterprise"), cert. den., 127 S. Ct. 1381, 167 L.Ed.2d 174 (2007). At a minimum, plaintiffs have alleged facts permitting the inference that an association-in-fact enterprise exists. See Aiv Insurance Co. v. Olmec Medical Supply, Inc., 2005 WL 3710370, at *7 (E.D.N.Y. Feb. 22, 2005) ("At this stage, plaintiffs have sufficiently alleged facts allowing the inference that defendants were on notice of the general nature of the enterprise.").

The complaint pleads a RICO enterprise sufficient to survive defendants' motion to dismiss.

## POINT IV

### THE COMPLAINT IS SUFFICIENT TO PLEAD ANTITRUST CLAIMS

A.    There is no Heightened Pleading Requirement

The same liberal pleading requirements apply to antitrust claims as apply to RICO claims. There is no heightened pleading requirement for antitrust cases. "[O]nly enough facts to state a claim to relief that is plausible on its face" is all that is required. Bell Atlantic, 127 S. Ct. at 1974. As to antitrust cases in particular, the Supreme Court has stated that "dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." George Haug Co., Rolls Royce Motor Cars, Inc., 148 F.3d 136, 139 (2d Cir. 1998) (quoting Hospital Building Co. v. Trustees of Rex Hospital, 425 U.S. 738, 746, 96 S. Ct. 1848 (1976)); see also Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001); Dresses for Less, Inc. v. CIT Group/Commercial Services, Inc.,

2002 WL 31164482, at *6 (S.D.N.Y. Sept. 9, 2002).

Plaintiffs claim that defendants' Illegal Alien Hiring Scheme restrains free competition within the construction industry by giving them an unfair competitive edge against competitors who do not employ illegal aliens. (Compl. ¶ 78.) The Illegal Alien Hiring Scheme allows defendants to keep their labor costs low, thereby "allowing them to unfairly underbid their competitors for construction projects for which they are awarded." (Id.) The Illegal Alien Hiring Scheme also restrains competition among workers competing for jobs. (Id.) By illegally inflating the labor pool of available workers, defendants hire workers, not based on skill and experience, but on acceptance of low wages. (Id.) This restraint on competition also has the effect of discouraging workers' efforts to advocate for better wages, overtime pay, benefits, and safe working conditions. (Id.) Plaintiffs allege that the participants of the Illegal Alien Hiring Scheme include the defendant EMC companies, Michael Mahoney, who was actively involved in all aspects of the business of EMC, including the hiring of its workforce, and American Latin, who conspired with defendants to provide EMC with illegal aliens. (Id. ¶ 14-35, 56-57.) Plaintiffs allege defendants' Illegal Alien Hiring Scheme violates § 1 of the Sherman Act. (Id. ¶ 109-117.)

The Complaint alleges sufficient facts to state antitrust claims which are "plausible on its face." Bell Atlantic, 127 S. Ct. at 1974. Defendants' motion to dismiss should be dismissed.

B.     The Complaint Sufficiently Alleges an Agreement

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states . . . " 15 U.S.C. § 1. To establish a § 1 violation, a plaintiff must show: "(1) a combination or some form of concerted action between at least two legally distinct economic entities; and (2) such combination or conduct constituted an unreasonable restraint of trade either *per se* or under the rule of reason." Tops Markets, Inc. v. Quality Meats, Inc., 142 F.3d 90, 95-96 (2d Cir. 1998). "In analyzing claims

under Section One, the Court may entertain both direct and circumstantial evidence." <u>Fears v.</u>
<u>Wilhelmina Model Agency, Inc.</u>, 2004 WL 594396, at *3 (S.D.N.Y. Mar. 23, 2004).  To establish
the first element, a plaintiff must show the existence of an agreement, tacit or express.  <u>Klickads,</u>
<u>Inc. v. Real Estate Board of New York, Inc.</u>, 2007 WL 2254721 * 3 (S.D.N.Y. Aug. 6, 2007); <u>see</u>
<u>also</u> <u>Monsanto Co. v. Spray-Rite Service Corp.</u>, 465 U.S. 752, 768, 104 S. Ct. 1464, 1473 (1984)
("there must be direct or circumstantial evidence that reasonably tends to prove . . . a conscious
commitment to a common scheme designed to achieve an unlawful objective").

Defendants claim plaintiffs have failed to allege an agreement.  (Defs. Mem. p. 17-18)
However, plaintiffs have alleged the active participation of American Latin in the success of the
Illegal Alien Hiring Scheme.  Indeed, plaintiffs claim a RICO conspiracy in which defendants and
American Latin "unlawfully and willfully combined, conspired, confederated, and agreed . . . to
violate the INA by engaging in the Illegal Alien Hiring Scheme. (Compl. ¶ 106.)  Specifically,
plaintiffs allege that EMC entered into a business relationship with American Latin, in which
American Latin provided EMC with a pool of illegal workers to work on EMC job sites. (<u>Id.</u> ¶ 25-
26.) The workers provided by American Latin took direction from EMC staff on the job sites, but
were paid by American Latin. (<u>Id.</u> ¶ 26.)  Plaintiffs allege that American Latin knew that the
workers they provided to EMC were not authorized to work in the U.S. (<u>Id.</u> ¶ 28.)  Plaintiffs allege
that EMC knew or had reason to know that the workers American Latin provided were not
authorized to work in the U.S. (<u>Id.</u> ¶ 29.)  Plaintiffs also allege that EMC and American Latin
engaged in a scheme in which they knowingly falsely attested to having complied with the I-9
requirements when in fact, they did not request proof of employment eligibility, did not examine the
necessary documentation, and/or knowingly and recklessly accepted false documentation as proof
of employment eligibility. (<u>Id.</u> ¶ 40-41.)  Plaintiffs allege that American Latin received a fee for
each worker provided to EMC. (<u>Id.</u> ¶ 26.)

Plaintiffs have alleged enough facts to conclude, either directly or inferentially, that EMC and American Latin entered into an agreement, tacit or express, to hire illegal aliens with the express purpose of depressing the wages of all the workers so that they could make considerable profits. Assuming, *arguendo*, that the facts do not sufficiently show evidence of an agreement, plaintiffs have certainly alleged enough facts "to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Bell Atlantic, 127 S. Ct. at 1965; see also U.S. Information Systems, Inc. v. International Brotherhood of Electrical Workers Local Union Number 3, AFL-CIO, 2002 WL 91625, at *4 (S.D.N.Y. Jan. 23, 2002) ("great leeway should be allowed the pleader, since by the nature of the conspiracy, the details may not be readily known at the time of the pleading").

C.    Plaintiffs have Standing

The antitrust laws were enacted for "the protection of competition, not competitors." Brown Shoe Co. v. U.S., 370 U.S. 294, 320, 82 S. Ct. 1502, 1521 (1962). In order to have standing to prosecute private antitrust claims, a plaintiff must allege both antitrust injury and antitrust standing. Balaklaw v. Lovell, 14 F.3d 793, 798 n. 9 (2d Cir. 1994). An antitrust injury is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489, 97 S. Ct. 690, 697 (1977). "The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." Id.

Defendants claim that plaintiffs' lack standing to assert their antitrust claims. (Defs. Mem. p. 18-20) Defendants allege that the proper plaintiffs are defendants' "corporate competitors." (Id. at 19) While defendants conveniently cite a litany of cases in which courts held that shareholders and employees of an injured corporation lack antitrust standing[3], none of the cases cited stand for

---

[3] Defendants also cite Air Courier Conference of America v. American Postal Workers Union, 498 U.S. 517, 111 S.Ct. 913 (1991), a case not involving alleged violations of the Sherman Act.

the proposition that plaintiffs, as former employees of defendants, per se lack antitrust standing. (Id. at 19)

Plaintiffs allege that defendants conspired with American Latin to depress the wages of their workforce by engaging in the Illegal Alien Hiring Scheme. (Compl. ¶¶ 78, 113-15.) Plaintiffs further allege that defendants' employment of large numbers of illegal aliens substantially increased the supply of workers available to EMC. (Id. ¶ 33.) This unlawful expansion of the labor pool had the direct and proximate result of allowing EMC to depress the wages of their entire workforce, including those lawfully authorized to work in the U.S. (Id.) In addition to providing defendants with an unfair advantage over their competitors who do not use illegal alien labor, plaintiffs claim that defendants' illegal anticompetitive conduct forced them to accept wages far below what they would were it not for the Illegal Alien Hiring Scheme. (Id. ¶ 34, 78.)

Plaintiffs have alleged an antitrust injury.  The injury alleged by plaintiffs, restraint in their ability to conduct business relations, i.e. compete for jobs unhampered by defendants' illegal scheme, "is the type of injury the Sherman Act, which seeks to preserve free and unfettered competition, was designed to prevent." Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc., 253 F.Supp.2d 262, 272 (D. Conn. 2003); see also Northern Pacific Railway v. United States, 356 U.S. 1, 4, 78 S. Ct. 514, 517 (1958) ("The Sherman Act was designed . . . at preserving free and unfettered competition as the rule of trade. It rests on the premise that the unrestrained interaction of competitive forces will yield the best allocation of our economic resources, the lowest prices, the highest quality and the greatest material progress . . .").

Once antitrust injury has been established, the plaintiff must show antitrust standing, namely that "he is a 'proper plaintiff.'" Arnold Chevrolet, LLC v. Tribune Company, 418 F.Supp.2d 172, 180 (E.D.N.Y. 2006) (quoting Balaklaw v. Lovell, 14 F.3d 793, 798 n. 9 (2d Cir. 1994)).  The Courts have identified several factors, akin to those applied to determine RICO standing, to

consider in determining whether a plaintiff has antitrust standing:  (1) "the directness or indirectness of the asserted injury"; (2) "the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement"; (3) "the speculativeness of the alleged injury"; and (4) "the difficulty of identifying damages and apportioning them among direct and indirect victims so as to avoid duplicative recoveries." National Association of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories, Division of/and American Home Products Corp., 850 F.2d 904, 912 (2d Cir. 1988) (citing Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 537-44, 103 S. Ct. 897, 908-11 (1983)).  These factors were later extended to apply in the RICO context. Holmes, 503 U.S. at 258, 112 S. Ct. at 1311.

As an initial matter, plaintiffs have Article III standing.  See Ross v. Bank of America, N.A., 524 F.3d 217, 223 n. 1 (2d Cir. 2008).  Article III standing requires:  (1) an injury in fact, i.e. an injury which is concrete and particularized, and actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) that it is likely that the injury complained of would be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992).   Plaintiffs allege a concrete and particularized injury, namely the depression of their wages, and an inability to enter into business relations unhampered by defendants' employment of illegal aliens. (Compl. ¶¶ 78, 113-15) See also Associated General Contractors, 459 U.S. at 528, 103 S. Ct. at 903 (a type of antitrust injury "[c]oercive activity that prevents its victims from making free choices between market alternatives.").  Plaintiffs' injury is actual, and causally related to defendants' antitrust violation.  Plaintiffs' injuries are also within the "zone of interests" sought to be protected by the antitrust laws. Lujan, 497 U.S. at 883, 110 S. Ct. at 3186. Lastly, plaintiffs' injury can be redressed by a favorable decision.

In addition to meeting the requirements for Article III standing, the Complaint meets the

21

factors set forth in <u>Associated General Contractors</u>, to confer antitrust standing.  As explained above in the analysis of RICO standing, the plaintiffs allege they are the direct victims of defendants' illegal conduct. Contrary to the cases cited by defendants, plaintiffs do not assert a derivative injury. <u>See Mendoza v. Zirkle Fruit Co.</u>, 301 F.3d 1163, (9th Cir. 2002) (applying antitrust standing principles to hold that the plaintiff class of legally documented agricultural workers were the direct victims of defendants' illegal hiring scheme).  As the direct victims, plaintiffs are the most motivated to "vindicate the public interest in antitrust enforcement." The fact that a direct competitor may also be motivated does not exclude plaintiffs as identifiable classes of persons sufficiently motivated to enforce the antitrust laws.  <u>See McCagg v. Marquis Jet Partners, Inc.</u>, 2007 WL 2454192, at *4 (S.D.N.Y. Aug. 29, 2007).  Plaintiffs' injury is not speculative.  Questions regarding the amount of damages is best left to experts and is not at issue at this stage of the proceeding.  Plaintiffs "must be allowed to make their case through presentation of evidence, including experts who will testify about the labor market, the geographic market, and the effect of the illegal scheme." <u>Mendoza</u>, 301 F.3d at 1171.  Lastly, there is no risk of duplicative recoveries. Plaintiffs allege they are the direct victims, and therefore would not be entitled to damages as a result of injuries suffered by a third party.  Defendants' motion to dismiss should be denied.

**POINT V**

**THE LABOR LAW CLAIMS ARE SUFFICIENTLY PLED**

Federal and New York labor laws require employers to pay their employees time-and-a-half overtime for all hours worked in excess of forty hours per week.  29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. Tit. 12 § 142.2.2. "To establish such a FLSA claim, plaintiff must prove that: (i) she was an employee who was eligible for overtime, i.e., that she was not exempt from the overtime pay requirements called for under the FLSA; and (ii) that she actually worked overtime

hours." <u>Tomney v. International Center for the Disabled</u>, 2003 WL 1990532, at *5 (S.D.N.Y. April 29, 2003) (citing 29 U.S.C. §§ 207, 213).

Defendants argue that plaintiffs' labor law claims must be dismissed for failure to plead "even a minimal factual description sufficient to put Defendants on notice and to be able to ascertain what defenses or exemptions of which there are many in the law would apply." (Defs. Mem. p. 21) Defendants' argument is completely without merit. Plaintiffs claim they are former employees of defendants EMC. (Compl. ¶ 1.) Plaintiffs claim they were not paid overtime wages. (<u>Id.</u> ¶ 82.) Plaintiffs claim they regularly worked over 40 hours a week, and that at times, they were paid no wages at all. (<u>Id.</u>) Plaintiffs claim defendants willfully failed to pay them their lawful wages (<u>Id.</u> ¶ 83), and that defendants knew they had to comply with wage and hour laws. (<u>Id.</u> ¶ 84.)

Plaintiffs' labor law claims do not involve complicated issues of fact and law. Plaintiffs' allegations provide enough facts to provide defendants with notice of what their claims are, and the grounds upon which the labor claims rest. <u>Bell Atlantic</u>, 127 S. Ct. at 1964. No more is required. "Engaging in interstate commerce" is an element of a FLSA cause of action that plaintiffs must demonstrate in order to prevail on the merits. However, there is no rule requiring plaintiffs to allege that element in their complaint to survive a motion to dismiss. See <u>Wade v. Johnson Controls, Inc.</u>, 693 F.2d 19, 21 (2d Cir. 1982) ("Under the liberal theory of notice pleading . . . a complaint need not state 'facts' or 'ultimate facts' or 'facts sufficient to constitute a cause of action.'"); <u>Velez v. Vassallo</u>, 203 F.Supp.2d 312, 330 (S.D.N.Y. 2002) (To prevail on a FLSA claim, a plaintiff "must demonstrate that the defendant is covered by the Act, such as by showing that the defendant constitutes an enterprise engaged in commerce. However, this required showing is simply an element of the cause of action."). Furthermore, it is disingenuous for defendants to claim they need further information to ascertain what their defenses or exemptions are. (Defs. Mem. p. 21) That information lies squarely in the hands of defendants. See <u>Martin v. Malcolm Pirnie, Inc.</u>, 949 F.2d

611, 614 (2d Cir. 1991) (under FLSA, "an employer bears the burden of proving that its employees fall within an exempted category").

Suits under FLSA have a two year statute of limitations. 29 U.S.C. § 255. The statute of limitations is extended to three years if the plaintiff can show that the defendant's violation of the Act was willful. Id. The question of willfulness is a question left to the trier of fact. Vaicaitiene v. Partners in Care Inc., 2005 WL 1593053 (S.D.N.Y. July 6, 2005); Davis v. Lenox hill Hospital, 2004 WL 1926086 (S.D.N.Y. Aug. 31, 2004); Donovan v. Kaszycki & Sons Contractors, Inc., 599 F.Supp. 860, 870 (D.C.N.Y. 1984) ("All that is required [to make a determination of willfulness] is that the employer knew or had reason to know that it was or might have been subject to the FLSA."). Plaintiffs have sufficiently pled their labor law claims.

## POINT VI

## PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND THE COMPLAINT

In the event the Court finds that plaintiff's complaint does not sufficiently plead the claims against defendants, the Court should grant plaintiffs' request for leave to file an amended complaint so that plaintiffs may amplify their claims with factual allegations to render their claims plausible. See Iqbal, 490 F.3d at 157-58 (citing Bell Atlantic, 127 S. Ct. at 1955); Commercial Cleaning, 271 F.3d at 380.

Under Rule 15(a), leave to amend should be freely given when justice so requires. Fed.R.Civ.P. 15(a); see also Official Publications, Inc. v. Kable News Co., 884 F.2d 664, 668 (2d Cir. 1989); In re Currency Conversion Fee Antitrust Litigation, 2006 WL 3247396, at *3-4 (S.D.N.Y. Nov. 8, 2006). This is especially true when the plaintiff seeks to amend a complaint that has been dismissed at the pleadings stage. See Ricciuti, 941 F.2d at 123 ("As a matter of procedure, when a complaint is dismissed pursuant to Rule 12(b)(6) and the plaintiff requests permission to file an amended complaint, that request should ordinarily be granted."). Indeed, "[w]hen a motion to

dismiss is granted, 'the usual practice is to grant leave to amend the complaint.'" <u>Ronzani v. Sanofi,</u> <u>S.A.,</u> 899 F.2d 195, 198 (2d Cir. 1990) (quoting 2A Moore & Lucas, Moore's Federal Practice ¶ 12.14 at 12-99 (2d ed. 1989)).  Generally, leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." <u>Milanese v.</u> <u>Rust-Oleum Corp.</u>, 244 F.3d 104, 110 (2d Cir. 2001).  In this case, discovery has not commenced, and this is plaintiffs' first request for leave to amend.  There is no evidence of undue delay, bad faith, undue prejudice or futility. Plaintiffs should be granted leave to amend, if necessary.

**POINT VII**

**THE COURT SHOULD RETAIN SUPPLEMENTAL JURISDICTION OVER**
**PLAINTIFFS' STATE LAW CLAIMS**

Finally, because as discussed in Points III through V, <u>supra</u>, plaintiffs' RICO, antitrust and labor law claims cannot be dismissed at this stage, defendants' argument that the Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims must fail.  <u>See</u> 28 U.S.C. § 1367(c)(3).

**CONCLUSION**

For the foregoing reasons, plaintiffs respectfully request that the Court deny defendants' motion to dismiss in its entirety. Should the Court find that the complaint does not sufficiently plead the claims against defendants, plaintiffs request leave to file an amended complaint.

Dated: August 1, 2008
      New York, New York               O'DWYER & BERNSTIEN, LLP

                                              s/ Gary Silverman
                                         Gary Silverman (GS9287)
                                         Joy K. Mele (JM0207)
                                         Attorneys for Plaintiffs
                                         52 Duane Street, 5th Floor
                                         New York, New York  10007
                                         (212) 571-7100

25